# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANDARA K. ZIMNICKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 2132 |
| ) | |
| GENERAL FOAM PLASTICS CORP., and ) | |
| NIXAN INTERNATIONAL, LTD., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Before the court are defendant Nixan International, Ltd.'s ("Nixan") motion for summary judgment and plaintiff Sandra K. Zimnicki's motion to lift the stay of discovery.  For the reasons explained below we deny Nixan's motion and deny Zimnicki's motion as moot.

**BACKGROUND**

Zimnicki has sued defendants Nixan and General Foam Plastics Corp. ("General Foam") for infringing her copyrighted "decorative deer" designs.[1]  Nixan, a Hong Kong company, argues that it is entitled to summary judgment because any alleged act of direct infringement occurred entirely outside the United States.  See,

---

[1] We discussed Zimnicki's allegations in greater detail in a prior opinion.  See Zimnicki v. General Foam Plastics Corp., No. 09 C 2132, 2010 WL 1257778, *1 (N.D.Ill. Mar. 24, 2010). We will assume that the reader is familiar with that opinion.

e.g., Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353, 1371 (Fed. Cir. 2008) (the Copyright Act does not reach activities that "'take place *entirely* abroad'") (quoting Subafilms Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1098 (9th Cir. 1994). The factual basis for the motion is supplied entirely by the declaration of Lewis Cheng, Nixan's director. Cheng states that in 2007 and 2008 General Foam ordered "lighted reindeer products" from Nixan "at its Hong Kong office." (Decl. of L. Cheng ¶¶ 5, 7.) A Nixan subsidiary, Nixan (Heyuan) Company Ltd. ("Nixan Heyuan"), manufactured the products at its factory in Heyuan, China. (Id.) Nixan then shipped the reindeer products overland to a port in Yantian, China, and from there they were shipped via General Foam's freight forwarder "Free on Board" ("FOB")[2] to General Foam in the United States. (Id. at ¶¶ 6-7.) Zimnicki challenges several of Mr. Cheng's contentions, and requests leave to depose him under Rule 56(f) (but does not provide an affidavit containing the information required by that Rule). Moreover, discovery was still in the early stages when Nixan filed its motion for summary judgment. Still, certain relevant facts appear undisputed. We infer from the record that General Foam, a Virginia corporation headquartered in Norfolk, Virginia, placed its product

---

[2] "'Free on board' is a method of shipping whereby goods are delivered at a destination location, usually a transportation depot, where legal title and thus the risk of loss passes from the seller to the buyer." N.A. Phillips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1578 n.2 (Fed. Cir. 1994).

orders from a location within the United States. (General Foam's Answer ¶ 2.) There is no dispute that the products were manufactured in China, although Zimnicki insists that Nixan (rather than Nixan Heyuan) manufactured them. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 7.) And Zimnicki concedes that the invoices she has reviewed to date support Cheng's contention that General Foam took legal title to the products in Yantian. (Id. at ¶¶ 8-9.) The arrangements for shipment from Yantian to the United States are somewhat less clear. We are meant to infer, we think, that General Foam selected (and paid) the third-party that physically delivered the goods to this country. (Cheng Decl. ¶ 6 (referring to "[General Foam's] freight forwarder".))[3] Although Cheng's declaration is vague on this point, it appears to be undisputed that Nixan itself did not physically deliver the products to the United States.

## DISCUSSION

**A.   Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[3]  In the bills of lading that Zimnicki submitted with her response FedEx Trade Networks Transport & Brokerage, Inc. is identified as the "forwarding agent." (See, e.g., Bill of Lading No. SZX071041653, attached as Ex. B to Decl. of M. Buchanio.)

P. 56(c)(2). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.  Subject Matter Jurisdiction**

Nixan argues that unless Zimnicki can show that a predicate act of infringement occurred within the United States, we lack subject matter jurisdiction to adjudicate her claims. (Def.'s Mem. at 4-8.) Some authorities treat extraterritoriality as a jurisdictional bar, see Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd., No. 02 Civ. 1151(CBM), 2003 WL 42001, *5-6 (S.D.N.Y. Jan. 6, 2003) (collecting authorities), others do not. See Litecubes, 523 F.3d at 1368; see also Wood v. Houghton Mifflin Harcourt Pub. Co., 569 F.Supp.2d 1135, 1138 (D.Colo. 2008). In Arbaugh v. Y&H Corp., 546 U.S. 500, 510 (2006) the Supreme Court

considered whether "Title VII's statutory limitation of covered employers to those with 15 or more employees" was jurisdictional. The court concluded that it was not, and in doing so articulated a "bright line" test: "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 516. The Copyright Act is not expressly limited to acts of infringement occurring within the United States, though federal courts have consistently applied that limitation. See, e.g., Litecubes, 523 F.3d at 1366-67; see also Subafilms, 24 F.3d at 1095-98 ("[C]ongressional enactments must be presumed to be primarily concerned with domestic conditions" unless Congress clearly indicates otherwise.) (citation and internal quotation marks omitted). Not surprisingly, then, "[t]here is no indication that Congress intended the extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal courts." Litecubes, 523 F.3d at 1368. Nixan points out that the pre-Arbaugh cases it cited in its opening brief are still good law in their respective jurisdictions, but it does not attempt to distinguish Arbaugh and Litecubes. We conclude that the location of infringement "is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction." Id.

**C. Direct Infringement**

As both parties recognize, the extraterritoriality question is very much alive in this case even if it is not jurisdictional. Nixan sold allegedly infringing goods manufactured in China directly to a United States purchaser for resale to consumers in the United States. Nixan argues that the transactions were structured in such a way that it "distribut[ed]" the allegedly infringing products "by sale" entirely in China. See 17 U.S.C. § 106(3). Zimnicki argues that the infringing act occurred at least partly in the United States because that is where General Foam, the purchaser, is located. See 4 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 17.02 (Rev. Ed. 2010) ("[A] distinction should be drawn between purely extraterritorial conduct, which is itself nonactionable, and conduct that crosses borders, so that at least a part of the offense takes place within the United States.").[4] In N.A. Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994), a patent case involving a challenge to personal jurisdiction under Illinois' long-arm statute, the Federal Circuit observed:

> [I]t is possible to define the situs of the tort of infringement-by-sale either in real terms as including the location of the seller and the buyer and perhaps the points along the shipment route in between, or in formal

---

[4] Neither party has cited, nor are we aware of, any controlling Seventh Circuit authority.

> terms as the single point at which some legally operative act took place, such as the place where the sales transaction would be deemed to have occurred as a matter of commercial law.

35 F.3d at 1579. The <u>N.A. Phillips</u> court rejected the "formalistic" approach and concluded instead that a "sale" occurs for purposes of the Patent Act where the buyer is located (although not necessarily only there). <u>Id.</u> In <u>Litecubes</u> the Federal Circuit applied this same analysis in a case involving arguably extraterritorial copyright infringement. <u>See</u> <u>Litecubes</u>, 523 F.3d at 1372 ("Substantial evidence supports the jury's conclusion that, by selling to customers in the United States, Glowproducts' distribution of the accused products has taken place, at least in part, in the United States."). In applying this standard, the Federal Circuit explicitly rejected the argument — made by Nixan in this case — that the distribution by sale occurs where title (and therefore the risk of loss) passes to the purchaser. <u>See</u> <u>Litecubes</u>, 523 F.3d at 1369, 1371; <u>see also</u> <u>N.A. Phillips</u>, 35 F.3d at 1579-80 ("Appellees have pointed to no policy that would be furthered by according controlling significance to the passage of legal title here. This case has nothing to do, for example, with the proper allocation of the risk of loss between parties to the underlying sales contracts."). Nixan contends that the Federal Circuit's ruling is inconsistent with the Copyright Act's language and that the court improperly relied on authorities construing the

Patent Act. (Def.'s Reply at 5-6.) We disagree. Section 106(3) of the Copyright Act provides that the copyright owner has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Nixan argues that the phrase "by sale or other transfer of ownership" means that the location where legal title was transferred (here, Yantian) is the location of the distribution by sale. "[T]ransfer of ownership" is a common definition of the term "sale." <u>See</u> Merriam-Webster Dictionary Online, available at http://www.merriam-webster.com/dictionary (last visited Sept. 29, 2010) ("1: the act of selling; specifically: the transfer of ownership of and title to property from one person to another for a price."). This language does not answer the question of where a "distribution by sale" occurs for purposes of applying the Copyright Act's presumed territorial limits. One could look to commercial law for guidance. <u>See, e.g.</u>, <u>Classic Concepts, Inc. v. Linen Source, Inc.</u>, Nos. CV 04-8088 GPS (MANx) & CV 04-8457 GPS (MANx), 2006 WL 4756377, *16-17 (C.D. Cal. Apr. 27, 2006) (relying on the Uniform Commercial Code definition of the term "sale," in the absence of a statutory definition, to determine when an infringing sale took place). But Nixan has not articulated any persuasive reason why we should do so here. It has not, for

instance, supported its position with reference to the policies behind the presumption against extraterritoriality.

Nixan effectively concedes that it could be held liable under the Copyright Act if it sold "infringing products directly to U.S. purchasers at their U.S. addresses." (Def.'s Reply at 6.) But it insists that <u>Litecubes</u> is distinguishable because Nixan shipped the products to the FOB point in Yantian and General Foam, "through its freight forwarder," shipped them from Yantian to the United States. (<u>Id.</u>) We are not persuaded that the shipment to Yantian, and the interposition of a third-party "freight forwarder," are significant. As far as we can tell, the products were delivered overland from Heyuan to Yantian because Yantian has a port and Heyuan does not. There is no evidence that General Foam, a Virginia corporation based in Norfolk, has any physical presence in Yantian. And we do not see why it should matter whose "shipper" the party uses — the "sale" between the Nixan and General Foam is still direct. <u>Cf.</u> <u>MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1377 (Fed. Cir. 2005) (distinguishing <u>N.A. Phillips</u> where the defendant sold allegedly infringing goods to a Japanese company in Japan, not "directly" to a United States purchaser). It appears that the sale and delivery to the United States occurred in one seamless transaction — or a series of such transactions. (<u>See</u> Decl. of M. Buchanio at Exs. A and C (Nixan invoices plainly indicating delivery to the United States.)) Either way, we are not persuaded that we should parse

the transaction in the technical way that Nixan has asked us to do. Cf. N.A. Philips, 35 F.3d at 1579 (defining "sale" for purposes of the Patent Act in "real" rather than technical terms); Litecubes, 523 F.3d at 1371 (applying the same reasoning to the Copyright Act). To rule otherwise would encourage gamesmanship.

The authorities Nixan relies on are not persuasive. In Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., No. 00 Civ. 9605 (DFE), 2002 WL 72930, *2 (S.D.N.Y. Jan. 17, 2002), which is closest to our facts, the plaintiff *admitted* that the sale occurred in Hong Kong. Consequently, the court had no reason to (and did not) address extraterritoriality in any meaningful way. Id. The court in Seals v. Compendia Media Group, No. 02 C 0920, 2003 WL 731369, *4 (N.D. Ill. Feb. 28, 2003), relying on Subafilms, concluded that the plaintiff had not stated a claim under the Copyright Act by alleging that the defendants, located in the United States, authorized infringing sales in the Philippines. See also Iverson v. Grant, 946 F.Supp. 1404, 1414 (D.S.D. 1996) (similar). The court did not consider whether the direct sale of infringing goods by a foreign seller to a domestic buyer was actionable. The same is true of Kolbe v. Trudel, 945 F.Supp. 1268, 1270 (D. Ariz. 1996), where the Canadian defendant produced and distributed allegedly infringing materials to his Canadian clients. In sum, we conclude that the standard articulated by the Federal Circuit in Litecubes is persuasive. Applying that standard to the undisputed facts

Nixan is not entitled to summary judgment on Zimnicki's claim for direct infringement.

**D.  Contributory Infringement**

Zimnicki asks us to construe her complaint to allege contributory, as well as direct, infringement.  (Pl.'s Resp. at 11 n.10.)  That is a stretch, and the mere fact that Nixan anticipated her contributory-infringement argument does not mean that she has properly pled such a claim.  But we will grant her request to amend her complaint to pursue that claim.  See Fed. R. Civ. P. 15(a)(2); see also Fed. R. Civ. P. 15(c)(1)(B).  As the court explained in Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp., 66 F.Supp.2d 454, 462 (E.D.N.Y. 1999),

> [A] defendant can be liable for contributory infringement, even for acts committed outside the United States, by inducing or contributing to another's infringement occurring in the United States by supplying such other person with the instruments for committing the infringement, provided the defendant knew or should have known that the other would or could reasonably be expected to commit the infringement.

See also GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F.Supp. 763, 773 (W.D.N.Y. 1991).  Nixan, of course, denies that it "knew or should have known" that the products it sold to General Foam infringed Zimnicki's copyrights.  (Decl. of L. Cheng ¶ 9-10.)  But "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." Lorillard Tobacco Co., Inc. v. A & E Oil, Inc., 503 F.3d 588, 594 (7th Cir. 2007) (quoting Chanel,

Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir.1991)). We see no basis at this point, with discovery barely even begun with respect to Nixan, to take the question away from the jury.

## **CONCLUSION**

Defendant Nixan's motion for summary judgment (61) is denied. In light of our ruling, we hereby lift the stay of discovery as to Nixan. Zimnicki's motion to lift the stay (95) is denied as moot. Zimnicki may file a second amended complaint by October 15, 2010. Defendants shall answer or otherwise plead by October 29, 2010. A status hearing is set for January 19, 2011 at 10:30 a.m.

DATE: October 4, 2010

ENTER: _____
John F. Grady, United States District Judge