09-2132.111-RSK                                        November 22, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SANDARA K. ZIMNICKI,                )
                                    )
       Plaintiff,               )
                                    )
       v.                       )    No. 09 C 2132
                                    )
GENERAL FOAM PLASTICS CORP.,        )
                                    )
       Defendant.               )

## MEMORANDUM OPINION

Before the court is defendant General Foam Plastics Corporation's ("General Foam") motion for summary judgment of non-infringement. For the reasons explained below we grant General Foam's motion in part and deny it in part.

## BACKGROUND

The parties have filed lengthy Local Rule 56.1 statements, and virtually all of the 95 separately numbered statements are disputed in whole or in part. Without wading too far into these disputes, many of which are irrelevant to the present motion, the basic facts are these.[1] In 2005 Sandra Zimnicki registered copyrights for three drawings depicting deer in three different poses: "Graceful Deer Standing," "Graceful Deer Lying Down," and "Graceful Deer

---

[1] Zimnicki requests additional discovery pursuant to Fed. R. Civ. P. 56(d) in the event that we rely on certain of General Foam's factual contentions. (See Decl. of Barry Irwin, dated May 13, 2011, ¶ 2.) We have not relied on those contentions, therefore no further discovery is needed to respond to the motion.

Leaping." (Pl.'s Stmt. of Add'l Facts ¶¶ 73-75; see also Certificates of Registration, attached as Exs. A, C, and D to Pl.'s Second Am. Compl.) The registrations describe these works as "[t]echnical drawings to create Christmas decorations." (See Certificates of Registration.)) Zimnicki claims that beginning in 2006 General Foam sold "lighted grapevine deer products" — Christmas lawn-decorations — that infringed Zimnicki's copyrighted works. (Def.'s L.R. 56.1 Stmt. ¶ 16 (hereinafter, "Def.'s Stmt.").) She has identified eight allegedly infringing "sku's:" (1) product numbers E20-320434 (2006), X20-300622B (2007), and X20-300004 (2008), allegedly infringing Graceful Deer Standing; (2) product numbers E20-320430 (2006), X20-300623B (2007), X20-300005 (2008), allegedly infringing Graceful Deer Lying Down; and (3) product numbers E20-320433 (2006) and X20-300621B (2007), allegedly infringing Graceful Deer Leaping (collectively, the "Accused Products"). (Id.; see also Zimnicki Aff. at Exs. F-M.) In the present motion, General Foam argues that a visual comparison of the Accused Products and Zimnicki's drawings demonstrates that its products do not infringe Zimnicki's copyrights.

## DISCUSSION

### A.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

- 3 -

P. 56(a).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "Summary judgment should be denied if the dispute is 'genuine':  'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question."  McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

## B.  Copying

"To establish copyright infringement, one must prove two elements:  '(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original.'"  JCW Investments, Inc. v. Novelty, Inc., 482 F.3d 910, 914 (7th Cir. 2007) (quoting Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 361 (1991)).  Zimnicki's copyright certificates are prima facie evidence that her copyrights are valid.  See id. at 914-15.  Although General Foam does not concede

- 4 -

that Zimnicki's copyrights are valid, (see Def.'s Mem. at 2 n.2),
it has not challenged their validity in its current motion.
Turning to the second element, "copying" is used in two senses in
copyright law. See Runstadler Studios, Inc. v. MCM Ltd.
Partnership, 768 F.Supp. 1292, 1296 (N.D. Ill. 1991) ("We have
placed 'copy' in quotes because it is used in two senses.").
"First, there is the factual question whether the defendant, in
creating its work, used the plaintiff's material as a model,
template, or even inspiration." 4 Melville B. Nimmer & David
Nimmer, Nimmer on Copyright § 13.01[B] (2011) (hereinafter,
"Nimmer"). The second, legal question is whether the "defendant's
work is substantially similar to plaintiff's work such that
liability may attach." Id. The concept of "substantial
similarity" is relevant to "copying" in both senses. Besides
direct proof of actual copying, which is often difficult to come
by, a plaintiff can establish copying in the first sense by showing
that the defendant had access to the plaintiff's work and that the
parties' works are substantially similar. See JCW Investments, 482
F.3d at 915. And as we will discuss in more detail later,
"substantial similarity" is also the standard courts apply to
"copying" in the legal sense; i.e., is the defendant's work
substantially similar to the original elements of the plaintiff's
work? See Stillman v. Leo Burnett Co., Inc., 720 F.Supp. 1353,

- 5 -

1358 (N.D. Ill. 1989) (describing the "dual usages" of the phrase "substantial similarity").

Zimnicki devotes a significant portion of her response to General Foam's motion developing her theory that the Accused Products are direct or indirect copies of products manufactured by Neo-Neon, a company with whom Zimnicki collaborated to design Christmas decorations in 2004. (See Pl.'s Resp. at 1-2, 10-13; Zimnicki Aff. ¶¶ 8-9, 11, 14.) Zimnicki contends that she and Neo-Neon parted ways sometime in 2004 or 2005, after which she learned that Neo-Neon was selling lighted deer products to Menards without her permission that were explicitly modeled on her designs. (Zimnicki Aff. ¶ 13.) After Zimnicki accused Neo-Neon and Menards of infringing her copyrights, Menards began purchasing the Accused Products from General Foam. (Pl.'s Resp. to Def.'s Stmt. ¶ 6.) General Foam obtained the products from Neo-Neon in 2006. (Def.'s Stmt. ¶ 24.) And then in 2007 and 2008 it commissioned Nixan International Ltd. and its affiliates to manufacture the products.[2] (Pl.'s Resp. to Def.'s Stmt. ¶ 6.) Zimnicki contends that the products General Foam sold in 2006, 2007, and 2008 are substantially similar to the products Neo-Neon sold to Menards in 2005. (Id.) She further contends that General Foam made minor modifications to the products in a deliberate attempt to avoid an

---

[2] Nixan and its affiliates (Keen Ltd. and GP Ltd.) were defendants in this case, but have since settled with Zimnicki.

- 6 -

infringement lawsuit, contrary to its representation that it only learned about Zimnicki and her copyrights in 2009. (Id. at ¶ 28.)

General Foam argues that Zimnicki's actual-copying theory is irrelevant to the current motion. We agree. Whether or not General Foam used Zimnicki's designs (or products based on those designs) as a model for its products, it is not liable for infringement if it did not copy the "elements of the work that are original." JCW Investments, 482 F.3d at 914 (citation and internal quotation marks omitted); see also Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F.3d 1007, 1011 (7th Cir. 2005) (finding no infringement even though it was "pretty clear" that the defendant set out to copy the plaintiff's product). The often-cited case Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir. 1971) illustrates the point. The plaintiff in Kalpakian accused the defendants of "infringing [its] copyright registration of a pin in the shape of a bee formed of gold encrusted with jewels." Id. at 739. The plaintiff cited circumstantial evidence of actual copying, and despite countervailing evidence that the defendants had independently created their product, the court considered it "unrealistic to suppose that defendants could have closed their minds to plaintiff's highly successful jeweled bee pin as they designed their own." Id. at 741. Nevertheless, the court found no infringement because the defendants had not copied any element of

- 7 -

the plaintiff's product that was not inherent in the idea of a jewel-encrusted bee pin. Id. at 741; see also Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004) ("Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression.") (emphasis added). General Foam makes a similar argument here: Zimnicki's drawings and the Accused Products share certain generic or stock characteristics, but its products do not copy Zimnicki's particular expression of those characteristics.

C.    **Substantial Similarity**

Substantial similarity is judged from the perspective of an "ordinary observer." Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp., 672 F.2d 607, 614 (7th Cir. 1982), *superseded by statute on other grounds as recognized in* Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423 (7th Cir. 1985). "Specifically, the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Id. "It has been said that this test does not involve analytic dissection and expert testimony, but depends on whether the accused work has

- 8 -

captured the total concept and feel of the copyrighted work." Id. (citations and internal quotation marks omitted); see also JCW Investments, 482 F.3d at 916 ("We look to the dolls themselves to determine substantial similarity . . . .").[3] Nevertheless, it is important to distinguish between similarities of protected expression and similarities that flow from a common idea. See Atari, 672 F.2d at 614-15. Copyright protection extends "to the expression of the idea — not the idea itself." Id. (quoting Mazer v. Stein, 347 U.S. 201, 217 (1954)) (internal quotation marks omitted). The related doctrines of merger and scenes a faire reflect this distinction. "[W]here idea and expression are indistinguishable" — i.e., where they "merge" — "the copyright will protect against only identical copying." Id. at 616; see also Kalpakian, 446 F.2d at 742. Similarly, the scenes a faire doctrine provides that liability cannot be premised on similarities in the "standard" or "stock" elements of a particular type of work. See Atari, 672 F.2d at 616; see also Bucklew v. Hawkins, Ash, Baptie & Co., LLP., 329 F.3d 923, 929 (7th Cir. 2003); Nimmer, supra, § 13.03[B][4].

---

[3] Zimnicki dismisses General Foam's comparison of the parties' products as "attorney argument," touting instead Zimnicki's "expert" testimony. (Pl.'s Resp. at 21-22.) Expert testimony is not required to visually compare Christmas decorations. Cf. Swirsky v. Carey, 376 F.3d 841, 849 (9th Cir. 2004) (case cited by Zimnicki identifying some of the distinct elements of a musical composition that might support a finding of infringement: "timbre, tone, spatial organization, consonance, dissonance, accents, note choice, combinations, interplay of instruments, basslines, and new technological sounds . . . .").

- 9 -

Both parties argue as though these doctrines are all-or-nothing propositions: either the doctrines apply, and Zimnicki is entitled to negligible protection (limited to "exact copying"); or they do not, and Zimnicki is entitled to "full" protection. It is more accurate to describe copyright protection as a sliding scale. "As a work embodies more in the way of particularized expression, it moves farther away from the bee pin in Kalpakian, and receives broader copyright protection. At the opposite end of the spectrum lie the 'strongest' works in which fairly complex or fanciful artistic expressions predominate over relatively simplistic themes and which are almost entirely products of the author's creativity rather than concomitants of those themes." Atari, 672 F.2d at 617. Both Zimnicki's drawings and the Accused Products depict deer with more or less lifelike proportions (with important differences that we will discuss later). There are pictures of dozens of such works in the parties' summary judgment materials — all of which will be familiar to anyone who has ever seen a Christmas-light display — and they all look more similar than different. Some features are simply inherent in the idea of the product: four legs that are narrow in proportion to the body, antlers, oval-shaped ears, and a small tail. Likewise, the same basic poses recur: facing forward (see, e.g., ZIM020597), stooping to eat or drink (see, e.g., id.), leaping (see, e.g., ZIM020604), and lying or sitting down (see,

- 10 -

e.g., ZIM020606 and ZIM020610).[4]  To base a finding of infringement on any one of these stock features or poses would effectively grant the copyright holder a monopoly on the idea.  It would be a stretch to say that there is only "one way" to express the common features of deer in this medium.  See Assessment Technologies of WI, LLC v. WIREdata, Inc., 350 F.3d 640, 643 (7th Cir. 2003) ("[I]f there is only one way in which to express an idea-for example, alphabetical order for the names in a phone book-then form and idea merge, and in that case since an idea cannot be copyrighted the copying of the form is not an infringement."); but see Nimmer, supra, § 13.03[B][3] (suggesting that "one way" formulation of the merger doctrine should not be taken literally).  But the choices are certainly limited, and we will bear that in mind as we compare the Accused Products with Zimnicki's copyrights.  We think it is also important to note, in light of the parties' arguments, that "substantial similarity" necessarily requires case-by-case analysis.  (Cf. Zimnicki Resp. at 7-9.)  The authorities that the parties cite elucidate general copyright principles; they do not tell us whether or not the particular works before us are substantially similar.  We turn to that question now.

**(1)  Graceful Deer Standing**

Graceful Deer Standing is a two-dimensional drawing depicting the outline of a deer standing up, with some minor details around

---

[4]  The just-cited examples appear in Exhibit D to Zimnicki's affidavit, which includes a compilation of product catalogs pre-dating Zimnicki's works.

- 11 -

the deer's muzzle and jaw. Zimnicki's drawing does not depict a deer exactly as it would appear in nature. The antlers are thinner and more uniform than actual deer antlers, and the legs and neck are elongated. The tail is erect and banana-shaped, and the ears are narrow ovals. The overall impression is more delicate (Zimnicki uses the terms "elegant" and "graceful") than an actual deer. But as we suggested before, Zimnicki's drawing does not stray too far from nature. The drawings are not cartoonish, unlike (for example) the exaggerated features of the deer depicted in Zimnicki's affidavit at paragraph 70. Or to use two more famous examples that the defendants cite in their brief: Bambi and Rudolph the Red Nosed Reindeer.[5] Those characters have distinctively large eyes and round heads. By comparison, the proportions of Zimnicki's deer are more lifelike.

Perhaps the most obvious difference between General Foam's standing deer (in all three iterations: 2006, 2007, and 2008) and Graceful Deer Standing is the former's "grapevine" frame. Zimnicki argues that this is not a true difference because her copyright "teach[es] the use of grapevine finishes." (Pl.'s Resp. at 24.) We disagree. Zimnicki attached to her copyright registration 10 renderings of essentially the same drawing with suggested "finishes" and/or embellishments. Some drawings depict (at least partially) the suggested features: for example, the holly draped

---

[5] We take judicial notice of the appearance of these famous animated characters. (Cf. Pl.'s Resp. at 6.)

- 12 -

over the deer's back in one of the drawings. Others simply describe them: the "white wire frame" deer and the "ropelight" deer are exactly the same picture with a different caption. One of these captions refers to a "twig" or "grape ivy" finish and includes a rendering of a small section of the twigs. The captions are ideas about how Graceful Deer Standing could be rendered in three-dimensions, not expressions of those ideas.[6] We conclude that General Foam's grapevine frame is a relevant difference in expression. In a given case, such differences may be insignificant. For example, in Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 511 (7th Cir. 1994) our Court of Appeals disregarded "trivial" differences in the "color and type of plush fur" used by the parties in their otherwise "remarkabl[y]" similar "animal-styled children's duffle bags." We do not regard the differences between Zimnicki's silhouetted deer and General Foam's wire-frame deer as trivial. The vine pattern contributes significantly to the product's overall look and feel. At the same time, we do not want to overstate the difference. A three-dimensional, wire-frame standing deer that copied the original elements of Zimnicki's drawings would infringe her copyright.[7] But General Foam's standing deer differ from Zimnicki's in other significant respects, too.

---

[6] The fact that Zimnicki lapses into patent jargon when referring to the suggested "twig" finish is telling. (See Pl.'s Mem. at 24 ("Ms. Zimnicki's copyright[s] do teach the use of grapevine finishes.").)

[7] The standing deer that Neo-Neon manufactured in 2005, depicted at paragraph 14 of Zimnicki's affidavit, comes close to the mark.

- 13 -

As General Foam points out, the neck and legs of its standing deer appear significantly shorter than Graceful Deer Standing. The back thighs of Zimnicki's deer have a tapered appearance — wide at the top, narrowing down the leg. By contrast, the back legs of General Foam's deer proceed almost in a straight line from the torso down to the ground. The head is simpler — unlike Zimnicki's drawing, there is no suggestion of a jawline — and the muzzle is shorter. The antlers of General Foam's deer appear to be shorter in relation to the deer's body, although the branching pattern is very similar. (An apt example of a trivial difference an ordinary observer would overlook is the "nub" or "branch" on the innermost antler of Graceful Deer Standing, which General Foam's products do not have. See Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 939 (7th Cir. 1989) ("[T]he substantial similarity inquiry is conducted from the perspective of the 'ordinary observer' who 'unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'") (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)).) The ears are also similar, although we think the range of possible expression here is narrow: there are a limited number of ways to depict the outline of a deer's ears. The tail of General Foam's deer is erect, but a different shape: rounder at the top and narrow near the body.

Zimnicki argues that all of these differences are "slight," and should be disregarded. But she cannot have it both ways: she

- 14 -

cannot claim copyright protection in an elongated and "graceful" deer and then disregard differences in the features that make her work original. See Atari, 672 F.2d at 614-15. Notwithstanding the similarity in the antlers, the different proportions General Foam's deer create a very different overall look and feel: General Foam's standing deer are short and stocky, not elongated and graceful. We conclude that no reasonable jury could find that General Foam's deer are substantially similar to the original expression in Zimnicki's Graceful Deer Standing.

**(2)  Graceful Deer Lying Down**

Graceful Deer Lying Down is a two-dimensional drawing resembling Graceful Deer Standing, but in a different pose. The deer's legs are folded underneath its torso, and its head is turned at an angle back towards its tail. The deer's back right leg is tucked underneath the deer's body, so that it cannot be seen in any of the three renderings ("backside," "front," and "side" views). The head, ears, and antlers of Graceful Deer Lying Down are substantially the same as Graceful Deer Standing. The tail is similar, but somewhat less "banana-like." The neck is elongated, but the overall impression of Graceful Deer Lying Down depends more on the particular pose, and the pattern and height of the antlers, than on its "graceful" proportions. General Foam's deer is depicted in substantially the same pose as Graceful Deer Standing: the deer is looking in the same direction and the legs are folded in a similar position, down to the angle of the deer's left rear

hoof.  And at least in the photographs that the parties have provided, the deer's back-right leg is not visible.[8]  The antlers are substantially similar, not only in the branching pattern — which was also true of General Foam's standing-deer products — but in their height relative to the deer's body.  The proportions of the torso and the neck are similar, although the neck and torso of General Foam's deer are perhaps a little shorter.  However, the different proportions of the two deer are not as striking as the differences between Graceful Deer Standing (tall, delicate) and General Foam's standing-deer products (short, squat).  The 2006 model's ears are similar in size to Graceful Deer Lying Down, whereas the 2007 and 2008 models' ears are smaller.  The tail is depicted at a slightly different angle, but is similar in shape. The 2007 and 2008 models of General Foam's deer have bows around their necks, Graceful Deer Lying Down does not.  These are all minor differences — they do not contribute to the products' overall look and feel.  See, e.g., Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611 (1st Cir. 1988) ("To avoid a finding of likelihood of success on the merits for Concrete, Classic will have to identify more significant differences than slight variations in size or a different positioning of a statue's head.").  Again, the "grapevine" finish of General Foam's products

---

[8]/  It is difficult to tell from the photographs, but it appears that General Foam's deer (the 2007 and 2008 models, at least) do not have a rear right leg.  If one were attempting to render Zimnicki's drawing in three dimensions, that is one way to go about it.

is an important difference between the two works, but we do not believe that it is dispositive.  (See infra n.6.)  In sum, we conclude that the parties' works are not so dissimilar that we can take the question away from a jury at this time.


### (3)  Graceful Deer Leaping

Zimnicki's Graceful Deer Leaping is a two-dimensional drawing depicting a deer leaping through the air.  The deer is depicted with a dense, wicker-like finish and is held in the air by means of a stick attached to a belt wrapped around the deer's torso.  There are sleigh bells attached to the belt, and a wreath is depicted around the deer's neck.  The deer's body is slender, and tapers to a very narrow and distinctive "waist" near the deer's back legs. The long front and back legs are positioned in such a way that all four legs are visible in profile.  The front legs are bent underneath the torso, and the deer's long back legs trail behind its body in the air.  The drawing appears to depict a single antler, with several curvilinear branches, rising out of the deer's head at a single point.[9]  However, we gather from Zimnicki's description of the drawing in her summary judgment materials that she intended to depict antlers with two main "branches" in a "single plane."  A note on the drawing indicates that they are

---

[9]  A three-dimensional deer with this single-antler configuration appears at Exhibit D to Zimnicki's affidavit at Bates page ZIM020699.

"positionable aluminum antlers." The tail is erect and crescent-shaped, the ears are oval-shaped.

### (a)  General Foam's Leaping Deer Products: 2006 Model[10]

The "grapevine" pattern of General Foam's deer is strikingly different than Graceful Deer Leaping. Instead of a complex web of intertwining branches, the individual "vines" that form the frame of General Foam's product are linear and follow the shape of the deer's body. Consequently, there is a significant amount of empty space between the vines, whereas the pattern depicted in Zimnicki's drawing appears opaque. The two deer are depicted in somewhat similar poses, although the similarity is not as striking as between the parties' "deer-lying-down" works. In this instance, they are no more similar than the idea of a leaping deer would dictate. See Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003) ("Satava may not prevent others from copying aspects of his sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium."). Zimnicki has cherry-picked an image of a deer somewhat clumsily leaping over a wire fence and argues that her deer is different. (See Group Ex. E to Pl.'s Stmt.) But even that picture shares elements in common with

---

[10]/  As with General Foam's other products, the two models of General Foam's leaping deer (2006 and 2007) are largely similar. But in this case, we think the differences are such we should discuss them separately.

the parties' works: front legs folded under the body, back legs trailing. As we mentioned earlier, this pose is reproduced several times in pre-2004 advertisements attached to parties' summary judgment materials.[11] Given the nature of the subject matter, and the limited range of expression that is possible, we do not think that the works' somewhat similar poses preclude summary judgment.

The 2006 model's body is a simple oval shape, without the tapering appearance that makes Zimnicki's deer distinctive. The neck and body are shorter, and the legs appear both shorter and thicker. The deer's tails are erect and roughly similar in shape. The antlers of General Foam's deer are not aluminum, nor (as far as we can tell) are they positionable. The branching pattern is similar to Graceful Deer Leaping: the antlers have the same number of branches in more or less the same position (with one minor difference). But the overall impression is different. In this case, some of the difference may be attributable to the differences between two- and three-dimensional works. For example, the tangled appearance of the antlers of General Foam's deer when viewed in profile. But the 2006 model's antlers do not share the stylized, flowing appearance of Graceful Deer Leaping's antlers. It is possible to create a similar effect in three dimensions, (see supra n.8), but General Foam has not copied that element of Zimnicki's work. The deer's head is shorter and less detailed than Graceful

---

[11]/ (See Ex. D to Pl.'s Stmt. at ZIM020604, ZIM020606, ZIM020611, ZIM020614, ZIM020629, ZIM020653, ZIM020655, ZIM020703, ZIM020706.)

- 19 -

Deer Leaping, which has a clear brow, and its ears are smaller. Viewing the products as a whole, we conclude that no reasonable jury could find that General Foam's products copy the original expression in Zimnicki's Graceful Deer Leaping.

**(b) General Foam's Leaping Deer Products: 2007 Model**

The 2007 model is more similar to Graceful Deer Leaping in some of its details. Its body narrows slightly near its back legs, which appear more similarly proportioned to Graceful Deer Leaping's legs. Like Zimnicki's drawing, the 2007 model's legs are positioned so that they can all be seen in profile. Moreover, the individual branches of the deer's antlers are distinguishable in profile and appear to flow backwards from top of the deer's head. But the overall look and feel of the two works is still very different. As we discussed with respect to the 2006 model, the wicker-like finish depicted in Zimnicki's drawing gives her work a dramatically different appearance. Moreover, Graceful Deer Leaping appears to be moving horizontally through the air in a way that suggests natural, effortless movement. The 2007 model is rigidly angled towards the sky, giving it a clumsy appearance. Its neck is shorter, its head is less detailed, and its ears are significantly smaller. In short, it is not "graceful," a term that accurately summarizes the elements of Zimnicki's work that distinguish it from the idea of a silhouetted or wire-form leaping deer. We conclude that General Foam is entitled to summary judgment of non-infringement as to the 2007 model, as well.

- 20 -

## CONCLUSION

General Foam's motion for summary judgment of non-infringement (204) is granted in part and denied in part.  We conclude that product numbers E20320434, MNX20-300622B, MNX20-300004, E20320433, and MNX20-300621B do not infringe Zimnicki's copyrights.  The similarities between General Foam's lying-down deer products (E20320430, MNX20-300623B, and MNX20-300005) and Zimnicki's Graceful Deer Lying Down are substantial enough to preclude summary judgment based only on a visual comparison of the products.  A status hearing is set for November 30, 2011 at 10:30 a.m.


DATE:     November 22, 2011


ENTER:    _____

          John F. Grady, United States District Judge